# 23-7483

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Ralph W. Baker, Jr.,

Plaintiff – Appellant,

v.

Ta-Nehisi P. Coates, BCP Literary, Inc., The Atlantic, Laurene Powell Jobs, David G. Bradley, Bertelsmann SE & Co. KGaA, Spiegel & Grau, Chris Jackson, Nicole Counts, Victory Matsui, Kenyatta Matthews, The Apollo, Maceo-Lyn, Kamilah Forbes, Susan Kelechi Watson, Warner Bros. Discovery, Inc., Ms. Oprah Winfrey, The Walt Disney Company, Apple, Inc., Plan B, MGM Studios, Ryan Coogler, Joe Robert Cole, Roxane Gay, Yona Harvey, The Atlantic Monthly Group LLC, Victoria Matsui, Entertainment, Inc., Metro-Goldwyn-Mayer Studios Inc., Spiegel & Grau LLC,

Defendants – Appellees.

On Appeal from the United States Southern District Court
For the Southern District of New York

Date Of The Last Court Decision – September 27, 2023

Ralph W. Baker, Jr.
112 South Elliott Place
Brooklyn, NY 11217
917-697-8168
ralphbakerjr@msn.com

# 23-7483

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

Ralph W. Baker, Jr.,

Plaintiff – Appellant,

v.

Ta-Nehisi P. Coates, BCP Literary, Inc., The Atlantic, Laurene Powell Jobs, David G. Bradley, Bertelsmann SE & Co. KGaA, Spiegel & Grau, Chris Jackson, Nicole Counts, Victory Matsui, Kenyatta Matthews, The Apollo, Maceo-Lyn, Kamilah Forbes, Susan Kelechi Watson, Warner Bros. Discovery, Inc., Ms. Oprah Winfrey, The Walt Disney Company, Apple, Inc., Plan B, MGM Studios, Ryan Coogler, Joe Robert Cole, Roxane Gay, Yona Harvey, The Atlantic Monthly Group LLC, Victoria Matsui, Entertainment, Inc., Metro-Goldwyn-Mayer Studios Inc., Spiegel & Grau LLC,

Defendants – Appellees.

On Appeal from the United States Southern District Court
For the Southern District of New York

Brief of Appellant Ralph W. Baker, Jr.

Ralph W. Baker, Jr.
112 South Elliott Place
Brooklyn, NY 11217
917-697-8168
ralphbakerjr@msn.com

# TABLE OF CONTENTS

Page(s)

Table of Contents ....……....……………....……………………………………… ii

Table of Authorities ……………………………………………………………… iii

Statutes & Rules……....……………………………………………………………iv

Statement of Subject Matter and Appellate Jurisdiction…....………………………1
Statement of the Issues Presented for Review…....………………………………...1

Statement of the Case ……………………………………………………….....2

Statement of the Facts ………………………………………………………4

Summary of the Argument …………………………………………………....6

Argument……………………………....…………………………………......7

    I.    District Court Erred When It Cited Failure To State A Claim……………7
    II.   District Court Erred In Not Considering Plaintiff's Argument Of
          Comprehensive Non-Literal Similarity…………………………………13
    III.  District Court Erred When It Suggested Plaintiff's Arrangement Of
          Words Or Literary Writing Style Not Protected By Copyright…………14
    IV.  District Court Erred By Ignoring Substantial Similarities Between
          Shock Exchange and Coates' Plagiarized Works…………………………16
    V.   District Court Erred In Dismissing The Case With Prejudice…………..17

Conclusion …………....………………………………………………………... 29

Certificate of Service……………………………………………………………30

## Table of Authorities

Arica Inst., Inc. v. Palmer, 970 F.2d 1067 (2d Cir. 1992)..............8, 12, 14, 20, 23

Arnstein v. Porter, 154.2d 464 (2d Cir. 1946) ...........................9, 20, 21, 22, 23

Ashcroft v. Iqbal, 556 U.S. 662 (2009)……...................................................7

Baker v. Coates, et al., 22-CV-7986 (JPO)……...........................................2

Burroughs v. Metro-Goldwyn Mayer, Inc.

683 F.2d 610 n. 14 (2d Cir. 1982) ................................................12, 13

Business Trends Analysts v. Freedonia Group, 887 F.2d 399 (2d Cir. 1989)........11

Chicago Record-Herald Co. v. Tribune Ass'n, 275 Fed. 797 (7th Cir. 1921)......9, 15

Clifford Ross Co. v. Nelvana, Ltd., 710 F. Supp. 517 (S.D.N.Y.)...................27

Craft v. Kobler, 667 F. Supp. 120 (S.D.N.Y 1987) .......................................8

Construction Technology v. Lockformer Co.,

704 F. Supp. 1212, 1222-23 (S.D.N.Y.1989)........................................28

Feder v. Videotrip Corp., 697 F. Supp. 1165 (D. Colo. 1988)...….........8, 12, 14

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)…........10, 11, 12, 15

Folsom v. Marsh, 9 F. Cas. 342 (1841) ….....................................................8

Holmes v. Hurst, 174 U.S. 82 (1899)…......................................9, 15, 16, 23

Jefferys v. Boosey, 4 H.L.C. 815, 867 ...................................................15

King v. Allied, 807 F. Supp. 300 (S.D.N.Y. 1992)......................................27

Mobile Anesthesiologists v. Anesthesia Assoc.,

623 F.3d 440, 443 (7th Cir. 2010)………………………………………17

Nichols v. Universal Pictures Corporation, 45 F.2d 119 (2d Cir. 1930) ………….10

Nutt v. National Institute Incorporated for the Improvement of Memory, ………….

31 F.2d 236 (2d Cir. 1929) ……………………………………………...,.……15, 23

Rauch v. Day Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)……..…………….. 17

Rosemont Enterprises Inc. v. Random House, Inc.,

256 F. Supp. 55 (S.D.N.Y. 1966)……………………………..……………..9, 15

Roth Greeting Cards v. United Card Co., 429 F.2d 1106 (9th Cir. 1970)……..10, 11

Salinger v. Random House, Inc., 811 F.2d 90 _2d Cir. (1987)…………...…8, 10, 12

Selevan v. New York Thruway Authority, 584 F.3d 82 (2d Cir. 2009)…………..……7

Sheldon v. Metro-Goldwyn Pictures, 81 F.2d 49 (2d Cir. 1936)………………17, 19

Steinberg v. Columbia Pictures Industries, 663 F. Supp. 706 (S.D.N.Y. 1987).18, 19

U.S. v. Stuckey, 253 F. App'x 468 (6th Cir. 2007)………..…………………….10

Wainwright Sec. v. Wall Street Transcript Corp., 558 F.2d 91 (2d Cir. 1977)...11, 12

Williams v. Crichton Knopf, Inc., 84 F.3d 581 (2d Cir. 1996)…………………..9, 10

Whitehead v. CBS/Viacom, Inc., 315 F. Supp. 2d 1, 11 (D.D.C. 2004)............15, 23

White-Smith Music Co. v. Apollo Co., 209 U.S. 1 (1908)….………...…………9, 16

Wojnarowicz v. Human Family Assn., 745 F. Supp. 130 (S.D.N.Y.1990)………..27

**Rules**

Fed. R. Civ. P. 38.………..…………………………………………………....2
Fed. R. Civ. P. 12(b)(6).………..…………………………………...................7

Fed. R. Civ. P. 12(b)(5)………………………………………….........17
Fed. R. App. P. 32(a)(5)…………………………………………..29
Fed. R. App. P. 32(a)(6)…………………………………………..29
Fed. R. App. P. 32(a)(7)(B)……………………………………...29
Fed. R. App. P. 32(f)……………………………………………..29

## Statutes

28 U.S. Code § 1291……………………………………………….1
28 U.S. Code § 1331……………………………………………….1
28 U.S. Code § 1338(a)…………………………………………….1
17 U.S. Code § 502………………………………………………..2
17 U.S. Code § 503………………………………………………..2
17 U.S. Code § 504………………………………………………..2
17 U.S. Code § 505………………………………………………..2
17 U.S. Code § 101………………………………………………..2
17 U.S. Code § 107………………………………………………..8
17 U.S. Code § 103(a)……………………………………………..8
17 U.S. Code § 106…………………………………….…………8, 9
17 U.S. Code § 102(a)……………………………………………13
New York General Business Law § 349………………………….28
New York General Business Law §350…………………………..28
New York General Business Law § 3368-d………………………28

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Pursuant 28 U.S. Code § 1331 and 1338(a) the Federal District Courts have jurisdiction over (1) civil actions concerning the Constitution, laws, and treaties of the United States, and (2) any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.

Pursuant to 28 U.S. Code § 1291 the courts of appeals shall have jurisdiction over appeals from all final decisions of the district courts of the United States. The District Court judgment was executed September 27, 2023. A notice of civil appeal was filed in a timely manner on October 19, 2023. This appeal is from a final judgement that disposes of all parties' claims.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the District Court err in citing Plaintiff failed to state a claim?

2. Did the District Court err in not considering Plaintiff's argument of comprehensive non-literal similarity?

3. Did the District Court err in ruling Plaintiff's arrangement of words or literary writing style were not protected by copyright?

4. Did the District Court err by ignoring substantial similarities between Shock Exchange and Coates' plagiarized works?

5. Did the District Court err in dismissing the Complaint with prejudice?

1

## STATEMENT OF THE CASE

Ralph W. Baker, Jr. ("Plaintiff") brought a copyright infringement action ("Complaint") against Ta-Nehisi Coates ("Coates") and twenty-four other defendants (together with Coates, "defendants"). Baker v. Coates, et al., 22-CV-7986 (JPO). Plaintiff filed the Complaint September 19, 2022 pursuant to the wholesale copying of Shock Exchange: How Inner-City Kids From Brooklyn Predicted the Great Recession and the Pain Ahead ("Shock Exchange"). Plaintiff sent the book and a review from *Library Journal* to Coates in 2013.

Plaintiff asked for statutory damages in an amount based upon defendant's willful acts of infringement pursuant to the Copyright Act, 17 U.S.C. § 101, et seq; Plaintiff asked for an award for costs and disbursements, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505; Plaintiff asked for pre-judgment and post-judgment interest, to the fullest extent available, and for the granting of such other further and different relief as District Court "deems just and proper;" Plaintiff asked for injunctive relief, profits and actual damages or statutory damages pursuant to 17 U.S.C. §§ 502-504; Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues so triable in this action.

Plaintiff read Coates' novel, "The Water Dancer," (Water Dancer) in 2019. Plaintiff alleged Coates copied the characters and the story, and mimicked the dense, rhythmic prose – "Shock Exchange rhythmic prose and tedious talk." Plaintiff alleged Coates' plunder began with *The Atlantic* article, "The Case For Reparations" ("2014 Essay"). Coates copied books, articles, and derivative works. He paraphrased numerous passages, and replicated Plaintiff's language and arrangement of words. Coates intentionally and knowingly used portions of Shock Exchange – an evil deception to make billions of dollars for him and his co-defendants without compensating the Plaintiff.

The defense attorneys' motion(s) to dismiss ignored Plaintiff's argument of comprehensive non-limited similarity. Magistrate judge's ("Magistrate Judge") Report and Recommendation ("R&R")[1] recommended the case be dismissed with prejudice, ignoring Plaintiff's argument of comprehensive non-literal similarity. Plaintiff provided a rigorous comprehensive non-literal similarity test, proving Coates' theft.[2] The District Court adopted the R&R via Judge J. Paul Oetken's Opinion And Order Adopting Report And Recommendation ("O&O").[3]

---

[1] Dkt. 145.
[2] Dkt. 150.
[3] Dkt. 158.

3

## STATEMENT OF THE FACTS

In September 2019 Plaintiff saw two words from an excerpt of Water Dancer – "Virginia" and "tobacco" – and knew immediately Coates had allegedly plagiarized Shock Exchange. Plaintiff purchased a copy, and was in disbelief. The main character, Hiram, was based on Plaintiff's description of his life, and other characters were based on Plaintiff's family. The story was verbatim from Shock Exchange; Coates copied passages and changed the words around. Coates copied Plaintiff's language and arrangement of words, stealing Plaintiff's identity. Coates asserted the book was based on the lives of the famed Frederick Douglass, Harriett Tubman and Thomas Jefferson.

Plaintiff alleged in the 2014 Essay Coates copied Plaintiff's expression of redlining, housing, and reparations. He put Plaintiff's name – "Baker" on the cover – hoping Plaintiff would notice. Coates protested the essay was inspired by books from Isabel Wilkerson and Arnold Hirsch. He cited historians like David Blight (Yale) and Beryl Satter (Rutgers), who appeared at speaking events with Coates – creating an ecosystem from Shock Exchange. They helped brandish Coates as a thought leader on banking, reparations and housing.

Before Between the World and Me ("Between") was published in 2015, Coates protested his newfound prose came from the famed James Baldwin.

4

Plaintiff alleged that actually, he mimicked the arrangement of words from Shock Exchange and used Baldwin as a false flag. Coates closely paraphrased descriptions of Plaintiff's life and told people it was his life.

In "The Black Family In The Age of Mass Incarceration" ("2015 Essay"), Coates copied Plaintiff's expression of mass incarceration and the economic impact on Blacks. Coates protested that mass incarceration was somehow connected to famous New York senator Daniel Patrick Moynihan. Coates cited Devah Pager (Harvard) and Bruce Western (Harvard), who created an ecosystem from Shock Exchange, and helped brandish Coates as a thought leader on mass incarceration and economics. We Were Eight Years In Power ("Eight Years"), published in 2017, included the plagiarized essays; it copied Plaintiff's (1) expression of reconstruction, and (2) arrangement of words. Coates and his co-conspirators copied Plaintiff's arrangement of words for the Black Panther comics, Captain America comics and the Black Panther movie, and other derivative works.

In May 2022 Plaintiff sought a settlement with Coates' co-conspirators. Venable LLP tried to strong-arm the Plaintiff; its July 2022 letter ("Venable Letter") called Plaintiff's claims "meritless," asserted Coates had working

papers that proved independent creation, and threatened a defamation suit.[4] Plaintiff filed the Complaint two months later. Davis Wright Tremaine LLP's ("Davis Wright") motion to dismiss (1) included a careful omission of any denial of copying, and (2) did not provide working papers or assert independent creation.[5] Plaintiff sought truth and justice. Davis Wright, Loeb & Loeb LLP ("Loeb & Loeb) and Schulte Roth & Zabell LLP ("Schulte Roth"), collectively, "litigation counsel," sought legal machinations to deny Plaintiff his due process. Plaintiff respectfully asks the Court to ensure the truth emerges via a jury trial.

## SUMMARY OF THE ARGUMENT

Coates and his co-defendants engaged in the wholesale copying of Shock Exchange and went through machinations to mask the piracy.

1. Plaintiff clearly stated a claim. Plaintiff provided facts, evidence, numerous accused passages, and supporting case law to buttress his claim.

2. Plaintiff's arrangement of words, and order of words in his composition is protected by copyright. Here, Plaintiff provided cases asserting this, including cases from the Supreme Court and U.S. Court of Appeals for the Second Circuit.

---

[4] Dkt. 112.
[5] Dkt. 93.

3. The District Court ignored Plaintiff's overwhelming evidence of substantial similarity between Shock Exchange and Coates' plagiarized works. The District Court cannot disprove copyright infringement by showing how much of Plaintiff's work was not pirated by Coates.

4. District Court erred when it dismissed Plaintiff's case with prejudice. Plaintiff could have made better pleadings to cure deficiencies. Here, Plaintiff makes better pleadings, including, providing an analytical dissection as proof of Coates' illicit copying of Plaintiff's language and arrangement of words.

## ARGUMENT

The Court makes a de novo review of district court dismissals of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Selevan v. New York Thruway Authority, 584 F.3d 82 (2d Cir. 2009). The Court must assume all "'well-pleaded factual allegations'" to be true, and 'determine whether they plausibly give rise to entitlement of relief.'" Selevan, 584 F.3d at 88. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662 (2009).

**I.      District Court Erred When It Cited Failure To State A Claim**

The R&R recommended Plaintiff's copyright claims be dismissed for "failure to state a claim." Via the facts and the evidence presented throughout the case,

Plaintiff established a valid claim and clearly stated a claim. Pursuant to Water Dancer, Eight Years, and Between, the Complaint stated Coates copied numerous passages and changed the words around (yet keeping the same expression), and tried to mask the piracy.[6] Salinger v. Random House, Inc., 811 F.2d 90 2d Cir. 1987, Craft v. Kobler, 667 F. Supp. 120 (S.D.N.Y 1987). Copying represented comprehensive non-literal similarity. Feder v. Videotrip Corp., 697 F. Supp. 1165 (D. Colo. 1988), Arica Inst., Inc. v. Palmer, 970 F.2d 1067 (2d Cir. 1992). Defendant copied the most important parts of Shock Exchange with the goal of superseding it.[7] Folsom v. Marsh, 9 F. Cas. 342 (1841). Pursuant to 17 U.S. Code § 107, factors considered in determining fair use of a work include the purpose and character of the use, amount and substantiality of the portion used, and the effect of the use on upon the potential market or value of the copyrighted work. Water Dancer, Eight Years, Between, stage plays, T.V. adaptation(s), the Captain America comics, the Black Panther comics, Black Panther movie, The 2014 Essay, and "The Black Family In The Age Of Mass Incarceration" ("2015 Essay") are collectively, the "plagiarized works." Pursuant to 17 U.S. Code § 103(a), the subject of a copyright includes compilations and derivative works. Protection for the plagiarized works does not extend to material they used unlawfully. Pursuant to 17

---

[6] Cmplt. ¶¶ 3,14.
[7] (Cmplt. ¶ 17).

U.S. Code § 106, the owner of a copyright of a literary work has the exclusive rights to prepare derivative works, and to publicly display and perform the copyrighted work.

Plaintiff alleged defendant(s) mimicked Plaintiff's dense, rhythmic prose, copied Plaintiff's language, arrangement of words, voice, sentence structure and literary writing style in the plagiarized works.[8] Holmes v. Hurst, 174 U.S. 82 (1899), White-Smith Music Co. v. Apollo Co., 209 U.S. 1 (1908), Rosemont Enterprises Inc. v. Random House, Inc., 256 F. Supp. 55 (S.D.N.Y. 1966), Chicago Record-Herald Co. v. Tribune Ass'n, 275 Fed. 797 (7th Cir. 1921).

Plaintiff alleged pursuant to Water Dancer, defendant copied stories about Plaintiff and his family. Defendant copied the characters, the setting, the story, the plot, the pacing and major themes.[9] To prove copyright infringement, Plaintiff much prove illicit copying (unlawful appropriation). The test is the response of the ordinary lay observer, and "dissection" is relevant. Arnstein v. Porter, 154.2d 464 (2d Cir. 1946). To prove copying that an ordinary lay observer would discern, courts usually recognize substantial similarities in "the total concept and feel, theme, characters, plot, sequence, pace, and setting." Williams v. Crichton Knopf,

---

[8] (Cmplt. ¶¶ 15, 16, 94, 95, 96, 97, 98, 99, 137, 147, 148, 149, 151, 152, 153, 157, 158, 160, 161, 162, 163, 164, 165, 166, 167, 168).
[9] (Cmplt. ¶¶ 72, 73, 74, 76, 78).

Inc., 84 F.3d 581 (2d Cir. 1996). Plaintiff's characters were well-developed and original.[10] Nichols v. Universal Pictures Corporation, 45 F.2d 119 (2d Cir. 1930).

In the plagiarized works, Defendant created the total concept and feel of Shock Exchange.[11] Roth Greeting Cards v. United Card Co., 429 F.2d 1106 (9th Cir. 1970). The selection, coordination, and arrangement of facts in Shock Exchange were original and creative, and defendant copied them for Water Dancer, and throughout the plagiarized works.[12] Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991). Defendant copied the accuracy and vividness of Plaintiff's description. Salinger, Inc. 811 F.2d at 96. Defendant confessed to (i) stealing Plaintiff's identity and his "special knowledge" (ii) copying Plaintiff's language, word choice, literary writing style, and arrangement of words, and (iii) forging documents. The confession establishes the element of a crime, and proves motive and intent, "You can certainly not say when somebody writes about killing snitches, that it doesn't make the fact that they may have killed a snitch more probable. . . ." U.S. v. Stuckey, 253 F. App'x 468 (6th Cir. 2007).[13] Defendant portrayed Harriet Tubman teleporting through history, and saving slaves through magic rather than guile and courage. This was a crude effort to create the

---

[10] (Cmplt. ¶¶ 82, 83, 84).
[11] (Cmplt. ¶¶ 85, 86, 87, 88).
[12] Cmplt: ¶¶ 75, 76, 77, 78, 117, 118, 119, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 140, 141, 142, 143, 144, 145, 146.
[13] (Cmplt: ¶ 81, Ex: A), (Cmplt. ¶¶ 79, 80, 81).

appearance of dissimilarity, which was in itself evidence of copying.[14] Business Trends Analysts v. Freedonia Group, 887 F.2d 399 (2d Cir. 1989). Defendant copied Plaintiff's language, arrangement of words and literary writing style. Defendant gave conflicting statements that his newfound prose was derived from slave novels; he previously implied it came from James Baldwin.[15] There is no countervailing evidence Coates created Water Dancer, the prose – or any of his plagiarized works – independent of Shock Exchange.[16] Roth, 429 F.2d at 1110.

Defendant plagiarized the 2014 Essay; defendant copied Plaintiff's interpretative analysis of redlining, how Blacks fought against redlining in Illinois, the inability of creditworthy Blacks to attain mortgages and loans, and the maps used by regulators to deny loans in Black neighborhoods. Defendant copied Plaintiff's description of reparations. The selection, coordination, and arrangement of facts were original and creative. Feist, 499 U.S. at 348, 349. Defendant copied Plaintiff's analysis and interpretation of events, and marshaled the facts like the Plaintiff. "What is protected is the manner of expression, the author's analysis or interpretation of events, the way he structures his material and marshals facts, his choice of words, and the emphasis he gives to particular developments …" Wainwright Sec. v. Wall Street Transcript Corp., 558 F.2d 91 (2d Cir. 1977). The

---

[14] (Cmplt. ¶ 89).
[15] (Cmplt. ¶¶ 107, 108, 109, 110, 111).
[16] (Cmplt. ¶¶ 101, 102, 103, 104, 105, 106).

copied material was the heart of the essay. <u>Burroughs v. Metro-Goldwyn Mayer, Inc.</u>, 683 F.2d 610 n. 14 (2d Cir. 1982).

In the 2015 Essay, defendant copied Plaintiff's expression of mass incarceration and the economic impact on Blacks. Plaintiff's selection, coordination and arrangement of the facts were original and creative. <u>Feist</u>, 499 U.S. at 348, 349. Defendant copied Plaintiff's analysis and interpretation of events, and marshaled the facts like the Plaintiff. <u>Wainwright</u>, 558 F.2d at 96. The copied material was the heart of the 2015 Essay. <u>Burroughs</u>, 683 F.2d at 624. For the 2014 Essay, the 2015 Essay and in Eight Years, defendant copied Plaintiff's language, arrangement of words, and literary writing style. The 2014 Essay and 2015 Essay were the heart of Eight Years.[17] <u>Burroughs</u>, 683 F.2d at 624.

Plaintiff alleged pursuant to Between, defendant copied numerous passages and moved the passages out of sequence.[18] <u>Feder</u>, 697 F. Supp. at 1172, <u>Arica</u>, 970 F.2d at 1073. Defendant copied Plaintiff's language and arrangement of words, and literary writing style. Defendant copied the accuracy and vividness of Plaintiff's description. <u>Salinger</u>, Inc. 811 F.2d at 96. The selection, coordination, and arrangement of facts were original and creative. <u>Feist</u>, 499 U.S. at 348, 349.

---

[17] (Cmplt: ¶ 138).
[18] (Cmplt. ¶¶ 139, 140, 141, 142, 143, 144, 145).

Pursuant to the Black Panther comic, the Captain America comic and the Black Panther movie, defendants wrote the prose and dialogue in Plaintiff's language, arranged words like Plaintiff, and copied Plaintiff's literary writing style. Pursuant to 17 U.S. Code § 102(a), copyright protection subsists for original literary works fixed in a tangible medium of expression that can perceived, reproduced or communicated. The language, and arrangement of words copied from Shock Exchange were the heart of Black Panther Comic, Captain America comic, and Black Panther movie.[19] Burroughs, 683 F.2d at 624.

## II. District Court Erred In Not Considering Plaintiff's Argument Of Comprehensive Non-Literal Similarity

The District Court, like all of the defendants, ignored one of Plaintiff's principal arguments pursuant to comprehensive non-literal similarity. The argument was not mentioned in the R&R or in any of the defendants' Memoranda of Law. Although Plaintiff understands Professor Nimmer's copyright infringement doctrine of "comprehensive non-literal similarity" to be far less well known than the doctrine of fragmented literal similarity (the latter of which includes only verbatim copying), the Second Circuit in Arica expressly adopted Professor Nimmer's doctrine of comprehensive non-literal similarity and Magistrate Judge was bound to consider Plaintiff's comprehensive non-literal similarity arguments, and the

---

[19] (Cmplt: ¶¶ 151, 155, 157, 161, 164, 168, 169).

ample evidence Plaintiff submitted, proving defendant's conduct plainly, obviously

ran afoul of comprehensive non-literal similarity.[20] Arica, 970 F.2d at 1073.

Professor Nimmer distinguishes between two types of similarity: (1)

comprehensive nonliteral similarity and (2) fragmented literal similarity.

"'Comprehensive nonliteral similarity' best describes the situation 'where the

fundamental essence and structure of one work is duplicated in another.' While

comprehensive similarity is present, there is no word for word or other literal

similarity. If such duplication or structure or essence is literal or verbatim, then

clearly substantial similarity results. Importantly, the mere fact that a defendant has

paraphrased rather than literally copied will not preclude a finding of substantial

similarity.'" Feder, 697 F. Supp. at 1172. Plaintiff also "succeeds under this

doctrine when it shows that the pattern or sequence of the two works is similar."

Arica, 970 F.2d at 1073.

Plaintiff provided a rigorous comprehensive non-literal similar test. The District

Court's failure to consider Plaintiff's argument of comprehensive non-literal

similarity – a pivotal part of the case – was a significant error.

### III. District Court Erred When It Suggested Plaintiff's Arrangement Of Words Or Literary Writing Style Not Protected By Copyright

---

[20] (Dkt. 150).

According to the O&O, "...a particular writing style or method of expression standing alone is not protected by the Copyright Act," quoting Whitehead v. CBS/Viacom, Inc., 315 F. Supp. 2d 1, 11 (D.D.C. 2004).[21] This was an error of law. The Whitehead court referenced Feist Publications, Inc., 499 U.S. at 350, 362, 111 S.Ct. 1282, which ruled an unoriginal compilation of facts from a typical telephone directory was not copyrightable; Whitehead is not applicable here.

Holmes ruled an author's arrangement of words is protectable: "The right thus secured by the copyright act is not a right to the use of certain words … But the right is to that arrangement of words which the author has selected to express his ideas … The nature of this property is perhaps best defined by Mr. Justice Erle in Jefferys v. Boosey, 4 H.L.C. 815, 867: 'The subject of property is the order of words in the author's composition.'" Holmes, 174 U.S. at 86.

Per Rosemont, "… White's choice of words and style in expressing the facts or describing them is plainly entitled to copyright protection." Rosemont Enterprises, 256 F. Supp. at 62, (S.D.N.Y. 1966). Per Chicago Record-Herald, "… but in so far as the Edwards article involves authorship and literary quality and style, apart from the bare recital of the facts or statement of news, it is protected by copyright law." Chicago Record-Herald, 275 F.2d 797, 799 (7th Cir. 1921). Per Nutt v. National Institute Incorporated for the Improvement of Memory, 31 F.2d 236 (2d Cir. 1929),

---

[21] Dkt. 158.

"A lecturer has the right to use the ideas expressed in another work, for a copyright does not monopolize the intellectual conception, but the form of expression and arrangement of words adopted by the copyright proprietor."

Per White-Smith Music, "'This court has substantially decided that the subject of property in a copyrighted musical composition is the order of the notes in the author's composition, by adopting in *Holmes v. Hurst*, 174 U.S. 86, Mr. Justice Erle's definition of the subject of property in a book or literary composition as being 'the order of the words in the author's composition.' And the same thing must also be true as to the notes of a musical composition. The only thing that has to be copied to constitute a copy of the copyright property is the order in which the notes were set down." White-Smith Music, 209 U.S. at 3.

## IV. District Court Erred By Ignoring Substantial Similarities Between Shock Exchange And Coates' Plagiarized Works

The District Court ignored the substantial similarities between Shock Exchange and Coates' plagiarized works. Per the O&O, "Such lack of similarity pervades the numerous comparisons that Baker provides in the complaint."[22] This is an error of law. The dissimilarities referenced in the O&O cannot eliminate the substantial similarities between Shock Exchange and the plagiarized works. Per

---

[22] Dkt. 158.

<u>Sheldon v. Metro-Goldwyn Pictures</u>, 81 F.2d 49 (2d Cir. 1936), "no plagiarist can excuse the wrong by showing how much of his work he did not pirate."

## V.     District Court Erred In Dismissing The Complaint With Prejudice

The District Court erred when it dismissed the Complaint with prejudice, asserting amendment would be futile.[23] It is plausible Plaintiff could have amended the Complaint and made better pleadings to cure deficiencies. Plaintiff points out those pleadings here. The district court erred when it asserted defendants were not served pursuant to "Rule 12(b)(5)."[24] All defendants voluntarily accepted the District Court's jurisdiction or waived the personal jurisdiction defense through conduct. Defendants (1) gave Plaintiff a reasonable expectation they would defend the suit on the merits, <u>Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc. of Houston Metroplex, P.A.</u>, 623 F.3d 440, 443 (7th Cir. 2010), and/or (2) made defensive moves prior to raising a defense to the court's personal jurisdiction "by Rule 12 motion or by a responsive pleading." <u>Rauch v. Day Night Mfg. Corp.</u>, 576 F.2d 697 (6th Cir. 1978). Pursuant to the Venable Letter, Coates – and his collaborators – defended the suit on the merits.

Davis Wright accepted service for the "Served Defendants" and "Disney Defendants."[25] Litigation counsel collaborated to "mount an organized defense that

---

[23] Dkt. 145, 158.
[24] Dkt. 145.
[25] Dkt. 12, Dkt. 14, Dkt. 66.

secures dismissal of Mr. Baker's baseless claims in their entirety," and (3) tried to prohibit Plaintiff "from filing any papers seeking a default judgment against any defendant ..."[26] Litigation counsel sought time extensions for all defendants, staying potential default judgements.[27] Loeb & Loeb sought to reject Plaintiff's Request for Default and quash Plaintiff's Affidavit of Service, and requested a time extension, prompting Magistrate Judge to vacate a clerk's certificate of default against Ms. Winfrey.[28]

The O&O asserted Plaintiff did not point to similarities "beyond factual narratives" pursuant to redlining.[29] Access to credit as an American right was Plaintiff's unique expression of the banking industry, and banks' mandate to serve the community.[30] Plaintiff made his observation after having worked in retail banking. Regulators drew "a redline through neighborhoods where only African Americans lived," was Plaintiff's unique expression, and a likely error.[31] Whites probably lived in redlined areas also. Coates never mentioned whites lived in redlined areas or whites deserved reparations, imitating Plaintiff's errors and anomalies. This similarity can only be explained through copying. Steinberg v.

---

[26] Dkt. 51.
[27] Dkt. 12, Dkt. 14, Dkt. 38, Dkt. 52, Dkt. 59.
[28] Dkt. 50.
[29] Dkt. 150.
[30] Cmplt. Ex: E, XVI.
[31] Complt. Ex: E, XV.

Columbia Pictures Industries, 663 F. Supp. 706 (S.D.N.Y. 1987). The 2014 Essay

also copied Plaintiff's unique expression on housing and reparations.[32]

The O&O asserted Plaintiff's description of Shock Exchange relative to

Water Dancer were generalized settings "not protectable under copyright law."[33]

The comprehensive non-literal similarity test proved Coates copied the setting's

uniqueness pursuant to (1) referencing Prince Edward County and Farmville

interchangeably (2) capitalizing the "Street," (3) the "Parade scene," (4) the "H-O-

R-S-E scene," (5) the "Lake Geneva Scene," and (6) how both settings were

fragile, emphasized gossip, being "mean," storytelling and family.[34] The O&O

highlighted dissimilarities between comparison's in the Complaint.[35] Again, this is

a legal error. Sheldon, 81 F.2d at 56. Still, Plaintiff could delete dissimilar passages

to cure the deficiencies.

The O&O asserted that pursuant to literary writing style, Plaintiff "does not

identify elements of Shock Exchange that constitute enough literary devices to

qualify as copyrightable material."[36] The comprehensive non-literal similarity test

showed defendants copied Plaintiff's arrangement of words.[37] The following

---

[32] Dkt. 150.
[33] Dkt. 158.
[34] Dkt. 150.
[35] Dkt. 158.
[36] Dkt. 158.
[37] Dkt. 150.

dissection also proves illicit copying. <u>Arnstein</u>, 154.2d at 468. Plaintiff compared language in the 2014 Essay and Shock Exchange from exhibit E of the Complaint.[38] Plaintiff examined (i) the top five repeated words, (ii) total number of times they were repeated ("total occurrence") and (iii) total occurrence divided by top five words ("density"). These metrics measure how Coates copied the pattern and structure, and density of Plaintiff's language. <u>Arica</u>, 970 F.2d at 1073.



The five most-repeated words in the 2014 Essay and number of times repeated were FHA (4), mortgage / mortgages (4), black (4), people (4), rate / rated (4). Total occurrence was 20, equating to a "density score" of 4.0x. The five most-repeated words from Shock Exchange were bank / banking / bank's / bank (9), loan / loans (8), lending (4), African-Americans (3) and complained (3). This total

---

[38] Cmplt: Ex: E.

occurrence was 27, which equates to a density score of 5.4x. Structurally, and in terms of patterns, the two passages are substantially similar. Of note, "mortgage / mortgages" and "black" were among defendant's most-repeated words, while "loan / loans" and "African Americans" were among Plaintiff's most-repeated words. These "similarities did not result from coincidence." <u>Arnstein</u>. 154.2d at 469.

The five most-repeated words by Coates for the 2015 Essay were prison (9), incarceration (8), rate (7), crime (7), black (7). The top five words in Plaintiff's narrative on mass incarceration were black (15), U.S. (11), population (9), incarceration (9), and dogs (9).[39]



The 2015 Essay has a density score of 7.6x versus 10.6x for Shock Exchange. Of note, "black" was one of the most-repeated word in both passages, and defendant

_____

[39] Cmplt. Ex: D.

repeated "incarceration" eight times, while Plaintiff repeated nine times. These "similarities did not result from coincidence." Arnstein. 154.2d at 469.

Pursuant to the "H-O-R-S-E scene," the five most-repeated words in defendants' passage were I (21), card / cards (9), said (6), letter (5), Caulley (5); the five most-repeated words in Plaintiff's passage were I (9), shot / shots (8), like (6), skippy (4), guy (4).[40] This was not a scene-a-faire; it was illegal for a slave to read, write, learn to read or write or know the alphabet.[41]



H-O-R-S-E Scene - Dkt. 120, Dkt. 126

Source: Ralph W. Baker, Jr.

■ Water Dancer ■ Shock Exchange

The density score for the scene from Water Dancer was 9.2x, versus 6.2x for Shock Exchange. Structurally, and in terms of patterns, the two passages are substantially similar. Of note, "I" was the most-repeated words in both passages. Defendant

---

[40] Dkt. 120, Dkt. 126, Dkt. 150.
[41] Dkt. 150.

mentioned "letter" five times, yet it was illegal for slaves to know the alphabet. Defendant referenced "card / cards" nine times, mimicking how Plaintiff referenced "shot / shots" eight times. Defendant mentioned the name "Caulley" five times, while Plaintiff mentioned "Skippy" four times. Structurally, and in terms of patterns, the two passages are substantially similar.

Pursuant to the "Parade Scene," the top five repeated words from Water Dancer were walked / walk / walking (6), they / they'd (6), Elm (2), Virginia (2), and splendor (2). The top five repeated words from Shock Exchange were school (3), high (3), band (3), town (2), and special (2).[42] Slavery was a cruel institution; a slave attending a parade or admiring white women is not a scene-a-faire.[43]



Source: Ralph W. Baker, Jr.

---

[42] Dkt. 120, Dkt. 126, Dkt. 150.
[43] Dkt. 150.

Density for Water Dancer was 3.6x versus 2.6x for Shock Exchange. Of note, the fourth and fifth most-repeated words and both passages were repeated twice. Structurally, and in terms of patterns, the two passages are substantially similar.

Pursuant to the "Lake Geneva scene," the top five repeated words from Water Dancer were I (7), saw (4), woman (2), water (2), thought (2). The top five words used by Plaintiff were I (12), Farmville (4), tea (3), lake (3), Geneva (3).[44]



Lake Geneva Scene - Cmplt: Ex: B, ¶ XIV

Source: Ralph W. Baker, Jr.

The top five repeated words by Coates were I (7), saw (4), woman (2), water (2), thought (2). The top five words used by Plaintiff were I (12), Farmville (4), tea (3), lake (3), Geneva (3). Density for Water Dancer was 3.4x versus 5.0x for Shock Exchange. Of note, the most-repeated word for both passages was "I," and Coates

---

[44] Cmplt. Ex: B, ¶ XIV, Dkt. 150.

repeated "water" two times, while "lake" and "Geneva" were repeated three times in Shock Exchange. Structurally, and in terms of patterns, the passages are substantially similar.

Defendants copied the arrangement of words from Shock Exchange's "Switch scene."[45] A detailed description of the "switch arrangement" was provided in the comprehensive non-literal similarity test.[46]



"Switch Arrangement" - 5 Most Repeated Words

Source: Ralph W. Baker, Jr., Dkt. 150

Density for Water Dancer, Between, Black Panther Movie, Black Panther comic, Captain America comic and Shock Exchange was 3.8x, 4.0x, 4.4x, 4.2x, 6.8x, and 4.8x, respectively.

---

[45] Cmplt. Ex: B, ¶ II, Cmplt. Ex: F, ¶VII, Cmplt. Ex: I, ¶ XVII, Cmplt. Ex: G, ¶ V, Cmplt: Ex: H, ¶ IX, Dkt. 150.
[46] Dkt. 150.

The five most-repeated words for Water Dancer were I / I'd (6) smiles / smiled / smile (6), father (3), standing (2), fields (2). The top-five for Between were I (6), time (4), lost (4), run (3), and mourned / mourning (3). The top-five for Black Panther movie were I / I'm (7), people (7), Vibranium (3), justice (3), and weapons (2). The top five for Black Panther comic were I (6), T'Challa (5), dream / dreaming / dreamer (4), theory (3), and man (3). The top five for Captain America comic were I / I've (18), know (6), seen (4), believe (4), captain (2). The top five for Shock Exchange were woods / would (9), switch (7), grandma (4), allen (2), beating (2). Of note, the word "I" (or variations of it) was repeated 18 times in the Captain America comic, and six to seven times for the other plagiarized works. The dissection proves illicit copying. Arnstein, 154.2d at 468, Arica, 970 F.2d at 1073, Holmes, 174 U.S. at 86, Nutt, 31 F.2d at 239, White-Smith Music, 209 U.S. at 3. The similarities "did not result from coincidence." Arnstein. 154.2d at 469.

Per the O&O, Plaintiff failed to state a claim under the Lanham Act or New York common law. The Appeal should be granted in Plaintiff's favor. The Lanham Act prohibits activities like trademark infringement, trademark dilution, false advertising, and unfair competition. Unfair competition involves market conduct which gains or seeks to gain an advantage over rivals through misleading, deceptive or fraudulent conduct in trade or commerce. Defendants engaged in misleading, deceptive, and fraudulent conduct. Defendants copied several plots and

storylines from Plaintiff's book without giving Plaintiff credit or compensation. Defendants (1) were improperly credited in the plagiarized works or advertising of the plagiarized works and (2) Ralph W. Baker, Jr. was not properly credited in the plagiarized works or advertising of the plagiarized works. In <u>King v. Allied</u>, 807 F. Supp. 300 (S.D.N.Y. 1992), the Southern District granted an injunction to Stephen King and concluded (1) the possessory credit was false and (2) the based upon credit was misleading. This violated section 43(a) of the Lanham Act.

Defendants' plagiarized works violated 43(a) of the Lanham Act. Defendants falsely alleged that they were the originators of the plagiarized works, and misappropriated from Plaintiff's literary skills. It will result in irreparable harm – presumed where Plaintiff has demonstrated probability of success under the Lanham Act. Plaintiff has also demonstrated irreparable harm. His creative work has been misattributed to a prominent author; reputational harm has been immeasurable. <u>Clifford Ross Co. v. Nelvana, Ltd.</u>, 710 F. Supp. 517 (S.D.N.Y.), aff'd without op., 883 F.2d 1022 (2d Cir.1989); <u>Wojnarowicz v. Human Family Assn.</u>, 745 F. Supp. 130 (S.D.N.Y.1990). Plaintiff need not demonstrate lost profits or tangible damage to his reputation to show irreparable harm.

New York Common law of unfair competition is analogous to the Lanham Act's unfair competition laws. Defendants have clearly violated the Lanham Act

and New York common law. Plaintiff is likely to succeed on the merits of his claim under New York General Business Law §§ 349, 350 and 368-d, which provide a private right of action for persons injured by deceptive acts or false advertising in the conduct of business. These provisions prohibit materially false and misleading advertisements which markedly affect the public. See, e.g., Construction Technology v. Lockformer Co., 704 F. Supp. 1212, 1222-23 (S.D.N.Y.1989);

## Conclusion

For the reasons set forth above, the Court should grant the Plaintiff the amount of $73,427,921,592. Plaintiff respectfully asks the Court to find the decision in his favor for all just and right decisions.

Respectfully Submitted,

_____

Ralph W. Baker, Jr., Pro Se
Plaintiff-Apllellant

## CERTIFICATE OF COMPLIANCE

I, Ralph W. Baker, Jr., hereby certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 6,331 words, excluding the portions of the brief exempted by Rule 32(f), according to the count of Microsoft Word.

I further certify that this brief complies with the typeface and type-style requirements of Rule 32(a)(5)-(6) because it is printed in a proportionally spaced 14-point font, Times New Roman.

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Baker                                           CERTIFICATE OF SERVICE

     v.                                      Docket Number: 23-7483

Coates

    I, Ralph W. Baker, Jr., hereby certify under penalty and perjury that on

_February 9, 2024_ [Date], I served a copy of the foregoing

instrument by Federal Express or other overnight service on the following parties:

Linda Steinman, Davis Wright Tremaine LLP, 1251 Avenue of the Americas, 27th

floor, New York, NY 10020;

Barry Slotnick, Loeb & Loeb LLP, 345 Park Avenue, New York, NY 10154;

Howard Schiffman, Schulte Roth & Zabel LLP, 901 15th Street NW, Suite 800,

Washington DC 20005.


_02/09/24_                          _Ralph W. Bar_

Today's Date                        Signature